## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL ACTION |
| v. | ) | |
| | ) | No. 04-20124-KHV |
| CHRIS FOLKERS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On September 16, 2004, a grand jury returned a three-count indictment which charged Chris Folkers with violations of 26 U.S.C. § 7206(1) including (1) wilfully filing a false United States Individual Income Tax Return (Form 1040) on March 10, 2000, for calendar year 1999, which reported $386,111 in losses from partnerships and S corporations when defendant had no such losses; (2) wilfully filing a false Application for Tentative Refund (Form 1045) on April 17, 2000, for calendar years 1997 and 1998, which reported net operating loss deductions of $306,405 for 1997 and $233,008 for 1998 when defendant had no such net operating losses; and (3) wilfully filing a false United States Individual Income Tax Return (Form 1040) on April 10, 2001, for calendar year 2000, which reported net operating losses of $156,003 when defendant had no such net operating losses.  See Superseding Indictment (Doc. #15).  This matter is before the Court on defendant's Motion To Dismiss Superseding Indictment (Doc. #40), defendant's Motion To Disclose Tax Audit Information Of Government Witnesses (Doc. #42) and defendant's Motion For Discovery Regarding Motion To Dismiss Superseding Indictment For Selective Prosecution (Doc. #43), all filed September 6, 2006.  On January 31, 2007, the Court conducted an evidentiary hearing with respect to the motions.  For reasons stated below, the Court overrules the motion to dismiss and sustains the motions to disclose and for discovery.

### **Factual Background**

While employed as a consultant at Sprint in Overland Park, Kansas, defendant met Terry Kapfer and David Ash.  Ash encouraged defendant and Kapfer to become involved in Anderson Ark and Associates ("AAA"), and defendant subsequently decided to invest in AAA after attending an investment seminar.

Through AAA, defendant learned about a Complex Business Organization ("CBO") and a loan program designed to fund the development of a new product called "Tax Magic."  Defendant signed up for the CBO utilizing the services of Tax Management Logistics and Tara LaGrande, a CPA with LaGrande Accounting and Tax, Inc.  Defendant received a Tax Analysis Report which outlined the anticipated costs and tax benefits of the CBO, which consisted primarily of two components: a Look Forward Partnership and a Look Back Joint Venture.

With the assistance of Tax Management Logistics, defendant executed a Partnership Agreement with Mason Advertising, LLC, to establish Folks Joint Ventures.  Defendant maintained a 95 per cent interest in Folks Joint Ventures, while Mason Advertising controlled the remaining five per cent.  Folks Joint Ventures then executed an investment agreement with La Maquina Blanca, SA to establish a loan in the amount of $400,000.00.  In his capacity as primary partner of Folks Joint Ventures, defendant paid $48,500.00 in closing costs to fund the loan.  The loan was then reported funded and La Maquina Blanca sent documentation to Mason Advertising to begin marketing Tax Magic.  Defendant acted as a passive investor and did not personally participate in marketing Tax Magic.

Tax Management Logistics helped defendant prepare tax returns for himself and Folks Joint Ventures. Tax Management Logistics informed defendant that he could count the loan from La Maquina Blanca as a net operating loss for Folks Joint Ventures and that the loss would flow through to him as

a general partner.  Tara La Grande prepared defendant's amended Income Tax Returns (Form 1040) for 1999 and 2000 and an Application for Tentative Refund (Form 1045) for 1997 and 1998.  Defendant signed these forms under penalty of perjury and filed them with the IRS.

In February and March of 2001, IRS Agents Jeff Trogden and David Thompson questioned defendant.  Defendant refused to fully cooperate with the IRS investigation regarding AAA and the CBO in which he had invested.  Specifically, defendant maintained his right to remain silent and refused to agree with the agents that the loan program was a fraud and his tax returns were false.  In July of 2002, when Agents Trogden and Thompson again attempted to interview him, defendant informed the agents that he had an attorney and would only answer questions submitted in writing.  Agents Trogden and Thompson refused this condition.

The United States charged defendant with three counts of wilfully filing false tax forms with the IRS in violation of 26 U.S.C. § 7206(1) in connection with his investments through AAA and the CBO.  At the hearing on his motions, defendant produced a list of 145 individuals identified as passive investors in the same CBO as he was involved.  See Defendant's Exhibit 412 ("CBO victim list").  The list identified these passive investors as victims in a case involving AAA in the Western District of Washington.  See In re Investigation of Keith Anderson, Grand Jury No. 01-1.  The record contains no information regarding the vast majority of these individuals or whether the United States has prosecuted them for tax fraud.[1]

_____

[1]        Included on the CBO victim list are Donald Brown, Bruce Burner, Alexander Cameron, Eric Carlson, Austin Chan, James L. Dixon, Robert Ford, Donald E. Gale, Marilyn Hommes, Subodh K. Pandit, Dennis L. Robichaurd and Richard Sherwin.  These individuals apparently took out loans between $200,000.00 and $3,500,000.00 in connection with AAA and the CBO, and claimed substantial deductions and/or refunds on tax forms filed with the IRS.  See Defendant's Exhibit 408.  It appears that the government has not criminally prosecuted any of these individuals.

(continued...)

**<u>Analysis</u>**

Defendant argues that the Court should (1) dismiss the superseding indictment because the IRS did not comply with the Paperwork Reduction Act ("PRA"), 44 U.S.C. § 3501 <u>et seq.</u>, which requires approval of tax forms, (2) order the government to disclose whether its witnesses are presently subject to audit or investigation by the IRS and (3) order limited discovery regarding his claim of selective prosecution.

## I.   **Defendant's Motion To Dismiss Superseding Indictment**

Defendant argues that the PRA provides a complete defense to the tax fraud charges because the Director of the Office of Management and Budget ("OMB") did not approve the tax forms which support the charges (Forms 1040 and 1045) and the forms are therefore invalid under the PRA. The government argues that the PRA does not provide a defense against prosecutions under the tax code, including Section 7206, which provides in pertinent part as follows:

> Any person who . . . [w]ilfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony.

26 U.S.C. § 7206(1).

Under the PRA, agencies which collect information must receive approval from the Director of OMB of the forms used to collect the information. Once the Director of OMB approves an information collection form, he assigns a control number (also called "OMB number") to that form and must

---

[1] (...continued)
Other than defendant, the parties identify only two individuals (Stephen Mohnkern and Scott Creasia) who have been criminally prosecuted for their involvement with AAA and the CBO.

periodically extend his approval of the form.[2]  Under the PRA, "no person shall be subject to any penalty for failing to comply with a collection of information that . . . does not display a valid control number assigned by the Director [of OMB]."  44 U.S.C. § 3512(a)(1).

The Director of OMB has assigned OMB number 1545-0074 to the U.S. Individual Income Tax Return (Form 1040) and related forms, including the Application For Tentative Refund (Form 1045) (these tax forms are collectively "the Forms").  On May 23, 1996, the Department of Treasury submitted the Forms to the Director of OMB for an extension of the currently approved collection.  See 61 Fed. Reg. 25,937-01 (May 23, 1996).  On August 23, 1996, June 16 and September 5, 1997, and July 7 and November 12, 1998, the Department of Treasury submitted the Forms to the Director of OMB for review and clearance regarding revisions of the Forms, but did not request an extension of the Director's approval on any of these occasions.  See 61 Fed. Reg. 43,571-01 (Aug. 23, 1996); 62 Fed. Reg. 32,680-01 (June 16, 1997); 62 Fed. Reg. 47,111-01 (Sept. 5, 1997); 63 Fed. Reg. 36,737-02 (July 7, 1998); 63 Fed. Reg. 63,355-02 (Nov. 12, 1998).  On May 14, 2001, the Department of Treasury submitted the Forms to the Director of OMB for extension of the Director's approval; the first extension sought by the Department of Treasury since May 23, 1996.  See 66 Fed. Reg. 24,419-01 (May 14, 2001).

Defendant argues that because the Department of Treasury did not comply with PRA approval requirements, the Forms contained invalid OMB numbers from May 23, 1999 (three years after the Director's last extension of approval) though May 14, 2001 (the date that the IRS sought another extension of the Director's approval).  Defendant further argues that because the OMB numbers were invalid on the Forms which he filed in 2000 and 2001, he has a complete defense in his criminal case

_____

[2]       Under the PRA, the Director of OMB may approve an OMB number for three years, see 44 U.S.C. § 3507(g), and agencies are required to seek extension of such approval before the three-year period expires, see 44 U.S.C. § 3507(h)(1)(B).

under Section 3512.  Defendant's argument is without merit.

While the PRA generally applies to tax forms, see Dole v. United Steel Workers of America, 494 U.S. 26, 33 (1990) (typical information collection forms under the PRA include tax forms), courts have widely rejected the argument that the PRA provides a defense against criminal prosecution under the tax code because the tax code creates a statutory obligation (the so-called "statutory origin rule"), see United States v. Ouwenga, 173 Fed. Appx. 411, 417 (6th Cir. 2006) (PRA does not invalidate statutory requirements of tax code);  United States v. Bentson, 947 F.2d 1353, 1355 (9th Cir. 1991) (PRA not intended to provide defense against prosecution under tax code); Springer v. United States, 447 F. Supp.2d 1235, 1238 (N.D. Okla. 2006) (PRA not designed to repeal statutory criminal penalties under tax code; Secretary of Treasury and IRS have clear authority under tax code to impose criminal penalties related to Form 1040); Woods v. Comm'r, 8 F. Supp.2d 1357, 1360 (M.D. Fla. 1998) (absence of OMB number not tantamount to illegal action by IRS which would trigger Section 3512).  While the statutory origin rule has not been accepted or rejected by the Tenth Circuit, see Pond v. Comm'r, No. 06-9002, 2007 WL 18928, at *2 n.2 (10th Cir. Jan. 4, 2007), it appears that the Tenth Circuit would adopt such a rule, see United States v. Dawes, 951 F.2d 1189, 1193 (10th Cir. 1991) (noting inclination to adopt statutory origin rule, but ruling on alternative grounds; stating that Congress did not enact the PRA to create a loophole in the tax code).  More generally, the Tenth Circuit has rejected challenges to tax collection which allege violations of the PRA as "completely lacking in legal merit and patently frivolous."  See Lonsdale v. United States, 919 F.2d 1440, 1448 (10th Cir. 1990); see also Shipley v. Comm'r, No. 99-2331-KHV, 2000 WL 575019, at *5-6 (D. Kan. Mar. 30, 2000).

The Court follows prevailing case law on this issue and finds that Section 3512 of the PRA does not provide a defense to criminal prosecution for violations of statutory obligations imposed under the

tax code, including wilful filing of false tax forms in violation of 26 U.S.C. § 7206(1).[3]  The Court

therefore overrules the motion to dismiss.

## II.    Defendant's Motion To Disclose Tax Audit Information Of Government Witnesses

Defendant requests the Court to order the United States to disclose tax audits and private revenue

rulings regarding government witnesses in this matter who are not Treasury Department employees.

Specifically, as explained at the hearing on his motions, defendant seeks disclosure of the existence of

audits, not the details of such audits.

On request, the United States must provide defendant exculpatory evidence, including

impeachment evidence, within its possession.  See Brady v. Maryland, 373 U.S. 83, 87 (1963); U.S. v.

Buchanan, 891 F.2d 1436, 1443 (10th Cir. 1989).  The fact that a witness is undergoing an IRS audit

or investigation is impeachment evidence under Brady because such evidence tends to show the possible

bias or prejudice of that witness.   United States v. Dawes, Nos. 88-10002-01, 90-10036-01,

88-10002-02, 1990 WL 171074, at *3 (D. Kan. Oct. 15, 1990).

Here, the evidence requested by defendant must be disclosed.  The Court therefore sustains the

motion to disclose tax audit information of government witnesses.

---

[3]        Defendant argues that it would be untenable to generally apply the PRA to tax forms
without applying Section 3512 as a defense to criminal prosecution based on such forms.  This argument
ignores the underlying purpose of the PRA, which is designed to reduce the paperwork burden imposed
by the federal government.   See Dole, 494 U.S. at 32.  Even without protecting against criminal
prosecution, the PRA serves to streamline information collection and ease the burden of such collection.
See 150 Cong. Rec. H3141-01 ("The Paperwork Reduction Act aims to make these information
collections as efficient as possible.  It requires agencies to estimate the time it will take to fill out a form
or otherwise provide information to the government.").  Because the PRA forces the IRS to streamline
its tax collection practices, it is not untenable to generally apply to the PRA to such practices while
refusing to apply the PRA as a loophole to criminal prosecution under the tax code.

### III.    Defendant's Motion For Discovery Regarding Selective Prosecution

Defendant argues that he has been singled out for prosecution and seeks discovery related to a future motion to dismiss the indictment for selective prosecution.  The government responds that defendant is not entitled to such discovery because he cannot satisfy his evidentiary burden on the essential elements of a selective prosecution claim.

Generally, federal prosecutors are entitled to "broad discretion" when enforcing federal criminal law.  Wayte v. United States, 470 U.S. 598, 607 (1985).  As essential elements of his selective prosecution claim, defendant must demonstrate that the federal prosecutorial policy had a discriminatory effect and was motivated by a discriminatory purpose.  United States v. Armstrong, 517 U.S. 456, 465 (1996).  Defendant is entitled to discovery if he presents "some evidence" tending to show these essential elements of his selective prosecution claim.  United States v. James, 257 F.3d 1173, 1178 (10th Cir. 2001).  To obtain discovery, defendant need not establish a prima facie case of selective prosecution.  Id.  Given the heavy burden which discovery may impose on the government, however, defendant's burden must be "a significant barrier to the litigation of insubstantial claims." Id.

#### A.    Discriminatory Effect

Defendant argues that discriminatory effect is shown because the government has prosecuted only a handful of the hundreds of people who executed partnership agreements through AAA with Mason Advertising and received loans through La Maquina Blanca.  The government responds that the individuals who were not prosecuted are not similarly situated to defendant because (1) many of them cooperated with the government by serving as witnesses in a related criminal prosecution and/or witnesses before a grand jury, and (2) defendant has provided no evidence that those individuals acted wilfully in violation of federal law.

To demonstrate discriminatory effect, defendant must show that similarly situated persons were not prosecuted.  Armstrong, 517 U.S. at 457.  The sampling of the CBO victim list, described above, presents some evidence tending to show discriminatory effect.  The individuals identified in the CBO victim list who testified before the Grand Jury appear to be sufficiently similar to defendant in terms of involvement as passive investors in AAA and the CBO.  On this record, the Court cannot tell who cooperated with the government because much of the Grand Jury testimony proclaims the seemingly legitimate nature of AAA and the CBO (which seems unhelpful to the government's case).  Furthermore, nothing in the record suggests that other individuals acted less wilfully than defendant.  Defendant has satisfied the discovery burden on this element of his selective prosecution claim.

### B.   Discriminatory Purpose

Defendant argues that discriminatory purpose is shown because the government singled him out for prosecution based on his exercise of rights to free speech and to counsel.[4]  The government responds that (1) defendant's evidence of discriminatory purpose is mere speculation and (2) the government is prosecuting defendant because he refused to cooperate, not because he exercised his right to free speech.

To demonstrate discriminatory purpose, defendant must show either direct or circumstantial evidence that discriminatory intent was a motivating factor in the decision to prosecute.  United States v. Alcaraz-Arellano, 441 F.3d 1252, 1264 (10th Cir. 2006).   Here, defendant has presented circumstantial evidence tending to show discriminatory purpose.  The government apparently decided

---

[4]      Defendant argues that he exercised his right to free speech – and that the government singled him out – because he elected to remain silent when interviewed by IRS agents.  Exercising the right to remain silent has been recognized as constitutionally protected conduct under the First Amendment.  See United States v. Pourhassan, 148 F. Supp.2d 1185, 1190 n.8 (D. Utah 2001) (citing Russo v. Cent. Sch. Dist., 469 F.2d 623, 634 (2d Cir. 1972)) (right to remain silent as much a part of First Amendment protections as right to speak out).

to prosecute defendant because it became frustrated with his refusal to admit that the loan program was illegitimate and the fact that he conditioned his cooperation on submission of written questions by IRS agents through his attorney.  Such evidence suggests that discriminatory intent was a motivating factor in the government's decision to prosecute.  In light of the fact that defendant did not completely refuse to cooperate, but simply invoked the right to counsel during such cooperation, the government's explanation is questionable.  The absence of a valid basis for prosecution may support defendant's selective prosecution claim.  See United States v. Steele, 461 F.2d 1148, 1152 (9th Cir. 1972) (without valid basis for prosecution, court may accept discriminatory purpose offered by defendant).  Defendant has satisfied the discovery burden on this element of his selective prosecution claim.

Because defendant presents at least some evidence which tends to show the essential elements of his selective prosecution claim, he is entitled to discovery on this issue.  Cognizant of the burden which such discovery potentially imposes on the government, the Court notes that discovery on this issue is limited to material information which the United States Attorney has knowledge of or access to regarding the individuals identified on the CBO victim list, Defendant's Exhibit 412, including the existence of any criminal or civil action against such individuals, the judicial district in which such action has been taken and prosecution referrals of those individuals by IRS Agents Trogden and Thompson.

**IT IS THEREFORE ORDERED** that defendant's Motion To Dismiss Superseding Indictment (Doc. #40) filed September 6, 2006 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that defendant's Motion To Disclose Tax Audit Information Of Government Witnesses (Doc. #42) filed September 6, 2006 be and hereby is **SUSTAINED**.  If the United States Attorney has knowledge of and access to IRS records, including tax audits and revenue

10

rulings, showing certain government witnesses, whose testimony and credibility are material to the guilt of defendant, are the subject of a current IRS audit or investigation, those records shall be disclosed as <u>Brady</u> material **on or before March 12, 2007**.

  **IT IS FURTHER ORDERED** that defendant's <u>Motion For Discovery Regarding Motion To Dismiss Superseding Indictment For Selective Prosecution</u> (Doc. #43) filed September 6, 2006 be and hereby is **SUSTAINED**.  Defendant is entitled to discovery of material information which the United States Attorney has knowledge of or access to regarding the individuals identified on the CBO Victim List, Defendant's Exhibit 412, including the existence of any criminal or civil action against such individuals, the judicial district in which such action has been taken and prosecution referrals of those individuals by IRS Agents Trogden and Thompson.  The government shall disclose such information **on or before March 30, 2007**.

  Dated this 28th day of February, 2007 at Kansas City, Kansas.

        <u>s/ Kathryn H. Vratil</u>
        KATHRYN H. VRATIL
        United States District Judge

11