**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CRIMINAL ACTION** |
| v. ) | |
| ) | **No. 04-20124-KHV** |
| **CHRIS FOLKERS,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

On September 16, 2004, a grand jury returned a three-count indictment which charged Chris Folkers with violations of 26 U.S.C. § 7206(1) including (1) wilfully filing a false United States Individual Income Tax Return (Form 1040) for calendar year 1999 on March 10, 2000; (2) wilfully filing a false Application for Tentative Refund (Form 1045) for calendar years 1997 and 1998 on April 17, 2000; and (3) wilfully filing a false United States Individual Income Tax Return (Form 1040) for calendar year 2000 on April 10, 2001. See Superseding Indictment (Doc. #15). On September 6, 2006, defendant filed a motion for discovery related to a selective prosecution defense. See Motion For Discovery Regarding Motion To Dismiss Superseding Indictment For Selective Prosecution (Doc. #43). On January 31, 2007, the Court conducted an evidentiary hearing on the motion, and subsequently determined that defendant had presented some evidence which tended to show the essential elements of a selective prosecution claim. It therefore ordered the government to produce information which defendant requested regarding certain individuals related to defendant's selective prosecution defense. See Memorandum And Order (Doc. #65) filed February 28, 2007, at 8-11. This matter comes before the Court on defendant's Motion To Dismiss With Memorandum In Support ("Motion To Dismiss") (Doc. #77) filed July 12, 2007. For reasons stated below, the Court overrules the motion.

**Background**

While employed as a consultant at Sprint in Overland Park, Kansas, defendant met Terry Kapfer and David Ash. Ash encouraged defendant and Kapfer to become involved in Anderson Ark and Associates ("AAA") and after attending an investment seminar, defendant decided to invest in AAA.

Through AAA, defendant learned about a Complex Business Organization ("CBO") and loan program designed to fund the development of a new product called "Tax Magic." Defendant signed up for the CBO utilizing the services of Tax Management Logistics and Tara LaGrande, a CPA with LaGrande Accounting and Tax, Inc. Defendant received a Tax Analysis Report which outlined the anticipated costs and tax benefits of the CBO, which consisted primarily of two components: a Look Forward Partnership and a Look Back Joint Venture.

With the assistance of Tax Management Logistics, defendant executed a Partnership Agreement with Mason Advertising, LLC to establish Folks Joint Ventures. Defendant maintained a 95 per cent interest in Folks Joint Ventures, while Mason Advertising controlled the remaining five per cent. Folks Joint Ventures then executed an investment agreement with La Maquina Blanca, SA to establish a $400,000 loan. As primary partner of Folks Joint Ventures, defendant paid $48,500.00 in closing costs to fund the loan. The loan was then reported funded and La Maquina Blanca sent documentation to Mason Advertising to begin marketing Tax Magic. Defendant acted as a passive investor and did not personally participate in marketing Tax Magic.

Tax Management Logistics helped defendant prepare tax returns for himself and Folks Joint Ventures. Tax Management Logistics informed defendant that he could count the loan from La Maquina Blanca as a net operating loss for Folks Joint Ventures and that the loss would flow through to him as a general partner. Tara La Grande prepared defendant's amended Income Tax Returns (Form 1040) for

1999 and 2000 and an Application for Tentative Refund (Form 1045) for 1997 and 1998. Defendant signed these forms under penalty of perjury and filed them with the IRS.

In February and March of 2001, IRS Agents Jeff Trogden and David Thompson questioned defendant. Defendant refused to fully cooperate with the IRS investigation regarding AAA and the CBO in which he had invested. Specifically, defendant maintained his right to remain silent and refused to agree that the loan program was a fraud and that his tax returns were false. In July of 2002, when Agents Trogden and Thompson again attempted to interview him, defendant informed the agents that he had an attorney and would only answer written questions. Agents Trogden and Thompson refused this condition.

In connection with his investments through AAA and the CBO, the United States charged defendant with three counts of wilfully filing false tax forms with the IRS in violation of 26 U.S.C. § 7206(1). As noted above, the Court conducted an evidentiary hearing on defendant's motion for discovery on the issue of selective prosecution. At the center of that hearing was a list of individuals identified as passive investors in the AAA CBO (the "CBO Victim List"). Like defendant, these individuals apparently invested in the AAA CBO – at amounts similar to or greater than defendant – while claiming bogus tax deductions. At the hearing, the Court ordered the government to disclose material information "regarding the individuals identified on the CBO Victim List . . . including the existence of any criminal or civil action against such individuals . . . and prosecution referrals of those individuals by IRS Agents Trogden and Thompson." See Memorandum And Order (Doc. #65) filed February 28, 2007 at 11. In a letter dated April 30, 2007, Assistant United States Attorney Leon Patton stated that, "I have been unable to obtain any information showing any criminal or civil actions against the persons on [the CBO Victim List]. Additionally, I have been informed that IRS Agents Trogden and

3

Thompson made no prosecution referrals concerning anyone on that list." Exhibit A attached to Motion To Dismiss (Doc. #77). Defendant now seeks dismissal of all counts on the ground that the government has selectively prosecuted him in retaliation for the exercise of his right to answer selectively and to have counsel present when IRS agents Trogden and Thompson questioned him.

## Analysis

Defendant argues that the government singled him out for prosecution because he exercised his right to answer selectively and to have counsel present when IRS agents questioned him. The Fifth Amendment prohibits prosecution deliberately based on an unjustifiable standard such as race, religion or other arbitrary classification, including the exercise of protected statutory and constitutional rights. Wayte v. United States, 470 U.S. 598, 608 (1985); see also United States v. Deberry, 430 F.3d 1294, 1299 (10th Cir. 2005) (ban on discriminatory prosecution applied to federal government through due process clause of Fifth Amendment). As essential elements of his selective prosecution claim, defendant must demonstrate that the federal prosecutorial policy (1) had a discriminatory effect and (2) was motivated by a discriminatory purpose. United States v. Armstrong, 517 U.S. 456, 465 (1996).

Because defendant is asking the judiciary to exercise power over a special province of the executive branch in which it possesses broad discretion, caution is required when evaluating selective prosecution claims. Deberry, 430 F.3d at 1299 (citing Armstrong, 517 U.S. at 464). The decision to prosecute – involving factors such as the strength of the case, the prosecution's general deterrence, the government's enforcement priorities and the case's relationship to the government's overall enforcement plan – is "particularly ill-suited to judicial review." Wayte, 470 U.S. at 607. Moreover, judicial review of prosecutorial decisions can chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the

government's enforcement policy.  <u>Armstrong</u>, 517 U.S. at 465.  Accordingly, "the presumption of regularity supports . . . prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." <u>Id.</u> at 464 (internal brackets and quotation marks omitted).  Although a prosecutor's discretion is bound by constitutional constraints, the standard for proving a selective prosecution claim is a "demanding one." <u>Id.</u> at 463-64.  Indeed, "[w]hen a prosecutor acts with probable cause, he has virtually unfettered discretion in his decision to prosecute." <u>United States v. McMillan</u>, 120 F.3d (Table), 1997 WL 413252, at *2 (10th Cir. July 23, 1997) (citing <u>Armstrong</u>, 517 U.S. at 464).

**I.    Discriminatory Effect**

To demonstrate discriminatory effect, defendant must show that similarly situated persons who did not engage in the same protected activity were not prosecuted.  <u>See</u> <u>Armstrong</u>, 517 U.S. at 465.  As evidence of discriminatory effect, defendant relies solely on the government's admission that it has not prosecuted any of the individuals identified in the CBO Victim List.  <u>See</u> <u>Motion To Dismiss</u> (Doc. #77) at 4 ("The record is now complete.  Of the 145 people on the CBO victim list, none were prosecuted criminally and none were proceeded against by civil action.").  In response, the government argues that the CBO Victim List is not an exhaustive list of the AAA CBO investors.  The government argues that it has prosecuted additional individuals associated with the AAA CBO, including: Erik Dehlinger; Thomas Miller; Ronald and Diane Palermo; Edward Robert Peck; Richard Castellini; Michael Gonet; Kris Smith; Scott Creasia; Marion Culhane; Roger Firestien; David Funk; Daniel and Mary Luczkow; Terry Lynn McKnight; Glen Murphy; Raghavan Chari; M. John Ludlow; and Lawrence

Conlan.[1]

In his reply, defendant argues that in terms of relative culpability, several of these individuals are not similarly situated to himself. Specifically, he argues that Castellini and Gonet were involved in a money laundering conspiracy; that Creasia, McKnight and Murphy claimed additional bogus tax deductions and/or filed false tax returns involving matters outside of the AAA CBO; and that Smith was an officer within AAA.[2] Even if defendant is correct that he is not similarly situated to these individuals, he has not demonstrated that the 11 other individuals whom the government has criminally prosecuted in connection with the AAA CBO did not engage in similar offense conduct, or that the government's

---

[1] In his reply, defendant apparently takes issue with the introduction of these additional prosecutions. See Reply (Doc. #83) filed October 25, 2007 at 3, n.8 ("Although the Court's Order is not explicit, there should be an ongoing duty of disclosure upon the government to provide additional qualified discovery, as it became known to the government and its agents."). To the extent that defendant seeks additional discovery, he has not shown that he is entitled to such. At the hearing on the motion for discovery, defendant's counsel represented to the Court that discovery regarding the CBO Victim List would be sufficient to support the selective prosecution claim. See Transcript (Doc. #82) filed October 19, 2007 at 29. Further, defendant has not shown that the government possesses any additional evidence which it has not disclosed.

[2] Defendant argues that he is not similarly situated to Conlan because Conlan engaged in unspecified "egregious conduct" in connection with the AAA CBO. In Conlan's case, the government charged seven counts of filing false tax returns. Conlan pleaded guilty to one count, and he received 15 months in prison. See United States v. Conlan, 500 F.3d 1167, 1168 (10th Cir. 2007). On appeal, the Tenth Circuit noted the district court's concern regarding Conlan's overall dishonesty and his hesitance to take responsibility for his actions. Here, as evidence that defendant wilfully violated federal tax law, the government has highlighted his refusal to admit the illegitimacy of the AAA CBO and his filing of the allegedly false tax return in April of 2001 (after IRS Agents had first approached him regarding the validity of the AAA CBO). See 26 U.S.C. § 7206(1) (criminalizing wilful filing of false tax return). Although the characterization of Conlan's conduct is vague, it does not appear to be markedly different from defendant's alleged conduct and defendant has not met his burden of proving that he is not similarly situated to Conlan.

The Court also notes that in Conlan, the Tenth Circuit generally described the prosecution of persons involved in the AAA CBO as a "multi-state prosecution of individuals who were connected with an organization that marketed and sold fraudulent tax shelter programs, or who participated in the tax shelters as Mr. Conlan did." Id. This description seemingly belies defendant's contention that he is an isolated target of an otherwise limited investigation.

6

prosecution of those 11 individuals could be explained by anything other than their alleged crimes. This evidence – which shows that the government has prosecuted others with similar offense conduct who have not engaged in the same protected activity as defendant – cuts against defendant's selective prosecution claim. See Wayte, 470 U.S. at 609-10 (where government prosecuted offenders who did not engage in protected speech, defendant – who had engaged in protected speech – could not prove discriminatory effect). On this record, the Court cannot find clear evidence of discriminatory effect.

## II.     Discriminatory Purpose

Even if the Court were to find discriminatory effect, it must also find clear evidence of discriminatory purpose. To demonstrate discriminatory purpose, defendant must put forth either direct or circumstantial evidence that discriminatory intent was a motivating factor in the decision to prosecute. United States v. Alcaraz-Arellano, 441 F.3d 1252, 1264 (10th Cir. 2006). Defendant argues that the government prosecuted him in retaliation for his assertion of his right to answer selectively and to have counsel present when IRS agents questioned him. See Motion To Dismiss (Doc. #77) at 5 ("The state of the record, therefore, establishes that this assertion of constitutional rights is what distinguishes [defendant] from the fortunate multitude of AAA CBO investors [who were not prosecuted].").

On the motion for discovery, the Court concluded that IRS Agents Trogden and Thompson apparently became frustrated with defendant's refusal to admit that the loan program was illegitimate and the fact that he conditioned his cooperation on submission of written questions to his attorney. See Memorandum And Order (Doc. #65) at 9-10. The Court found that these acts constituted some evidence of discriminatory purpose. Id. at 10. For purposes of this motion, however, defendant relies too heavily on the Court's previous ruling. The threshold to obtain discovery – some evidence of discriminatory purpose – is lower than the demanding standard which now applies to the motion to dismiss.

Armstrong, 517 U.S. 463-64.  Since the hearing on the motion for discovery, defendant has produced no additional evidence of discriminatory purpose; he continues to rely on an inference of discriminatory purpose drawn from circumstantial evidence of his interaction with Trogden and Thompson.  At best, this evidence suggests that the IRS agents may have been improperly motivated by frustration which stemmed from defendant's tactics.  Generally, however, any improper motive of the investigating agency will not be imputed to the prosecutor for purposes of establishing discriminatory purpose.  See United States v. Spears, 159 F.3d 1081, 1087 (7th Cir. 1998) (actions of investigating agency not imputed to federal prosecutor; defendant must show that prosecutor possessed genuine animus toward him); United States v. Hastings, 126 F.3d 310, 314-15 (4th Cir. 1997) (evidence of animus on part of IRS criminal division not imputed to government official who made decision to prosecute; such evidence does not satisfy burden of proof); see also United States v. Hommosany, 208 F.3d 204 (Table), 2000 WL 254050, at *2 (2d Cir. Mar. 3, 2000) (court may properly refuse to impute agency motive to ultimate prosecutor); United States v. Smith, 812 F.2d 161, 163 (4th Cir. 1987) (mere speculation as to motives of prosecutor insufficient to show discriminatory purpose).  Here, defendant presents no evidence that beyond referring him to the United States Attorney, IRS Agents Trogden and Thompson influenced the ultimate decision to prosecute.  Under these circumstances, the Court finds no clear evidence of discriminatory purpose on the part of the prosecuting attorneys.  See United States v. Monsoor, 77 F.3d 1031, 1034-35 (7th Cir. 1996) (animus of referring agency not imputed to prosecutor without more evidence; defendant must show that agency prevailed upon prosecutor in deciding to seek indictment); United States v. Erne, 576 F.2d 212, 216-17 (9th Cir. 1978) (allegations of agency animus insufficient to taint entire administrative process where decision to prosecute several steps removed from agency referral).

8

Defendant relies heavily on United States v. Steele, 461 F.2d 1148 (9th Cir. 1972), for the proposition that the Court may find discriminatory purpose where the government offers no plausible explanation for its prosecution. In Steele, the Ninth Circuit considered the selective prosecution claim of an outspoken census resistor who was convicted of unlawfully refusing to provide census information. Id. at 1150. The Ninth Circuit found that the government's enforcement procedure focused on vocal offenders, making it inherently suspect. Id. at 1152. Because it found the enforcement system inherently suspect and the government could offer no explanation for its prosecution – other than prosecutorial discretion – the Ninth Circuit found no valid basis for prosecution and concluded that defendant had sufficiently demonstrated discriminatory purpose. Id.

Steele is not helpful in this case, however, because defendant presents no evidence that the government's overall prosecution of those involved in the AAA CBO was inherently suspect. Without any indication that the government premised its enforcement policy on some impermissible criteria, the Court will not simply infer discriminatory purpose. Indeed, as the Ninth Circuit later held in Erne, where agency referrals to the United States Attorney are involved, defendant must present evidence of the prosecutor's own discriminatory motives. 576 F.2d at 216-217. Nothing in the record suggests that the government acted without probable cause to believe that defendant had violated federal tax law. Moreover, the government argues that it prosecuted defendant because he lied to IRS agents, which it contends constitutes unique evidence of his willful violation. Even if the Court were inclined to require a plausible explanation from the government, this would suffice.[3]

In sum, defendant has failed to carry his burden to present clear evidence of both discriminatory

---

[3] Even in Steele, the threshold of what constitutes a plausible explanation for prosecution is incredibly low as the Ninth Circuit stated that simple random selection would have been sufficient. 461 F.2d at 1152.

9

effect and discriminatory intent. Accordingly, defendant's motion to dismiss the indictment on the ground of selective prosecution is overruled.

**IT IS THEREFORE ORDERED** that defendant's Motion To Dismiss With Memorandum In Support (Doc. #77) filed July 12, 2007 be and hereby is **OVERRULED**.

Dated this 7th day of December, 2007 at Kansas City, Kansas.

                                        s/ Kathryn H. Vratil
                                        KATHRYN H. VRATIL
                                        United States District Judge